UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BETTY LAMB,                          :
                                     :CIVIL ACTION NO. 3:05-CV-2491
       Plaintiff,                    :
                                     :(JUDGE CONABOY)
            v.                       :(Magistrate Judge Mannion)
                                     :
MICHAEL ASTRUE, Commissioner  :
of Social Security,                  :
                                     :
       Defendant.                    :

---

## MEMORANDUM

In this Memorandum we consider Magistrate Judge Malachy E. Mannion's Report and Recommendation (Doc. 13) regarding Plaintiff's appeal of the denial of her claim for Social Security Disability Benefits ("DIB") under Title II of the Social Security Act ("Act"). 42 U.S.C. §§ 401-403.  The Magistrate Judge recommends denial of Plaintiff's appeal.  (Doc. 13 at 17.)  Because Plaintiff has filed objections to the recommended disposition (Doc. 14), we will make a *de novo* determination regarding the matters to which Plaintiff has objected.  *See* 28 U.S.C. § 636(b)(1)(C).

After a thorough examination of the record, for the reasons discussed below, we conclude this case must be remanded to the Commissioner for further consideration.

## I. Procedural History[1]

Plaintiff protectively filed applications for DIB on January

---

[1]  The Background section of this Memorandum, unless otherwise noted, is derived from the Magistrate Judge's Report and Recommendation (Doc. 9).

6, 2003, alleging disability since May 28, 2002, fibromyalgia, osteoarthritis, chronic fatigue syndrome, irritable bowel syndrome, and a bladder control problem.  (R. at 68-71, 130.)  The Social Security Administration denied Plaintiff's application initially (R. at 24, 36-39) and Plaintiff requested a hearing (R. at 30).

A hearing was held before an administrative law judge ("ALJ") on February 10, 2004.  (R. at 312-366.)  Plaintiff and a vocational expert ("VE") testified.  (*Id.*)  The ALJ issued an unfavorable decision on March 18, 2004.  (R. at 12-23.)  Plaintiff requested review from the Appeals Council (R. at 63), and on May 13, 2005, the Appeals Council denied the request for review (R. at 11). Thus, the ALJ's decision became the final decision of the Commissioner.  42 U.S.C. § 405(g).  Currently pending is Plaintiff's appeal of the Commissioner's decision.  (Doc. 1.)

The Magistrate Judge issued his Report and Recommendation on October 12, 2006.  (Doc. 13.)  Plaintiff filed written objections with supporting brief on October 20, 2006, (Docs. 14, 15), and Defendant filed a response thereto on November 1, 2006 (Doc. 16). Therefore, this matter is fully briefed and ripe for disposition.

## II. Evidence of Record

The Magistrate Judge thoroughly reviewed the evidence of record.  (Doc. 9 at 4-16.)  We repeat his summary here.

> The plaintiff was fifty-nine years old,
> and considered a "person of advanced age"
> under the Act, at the time of the ALJ's
> decision.  (TR. 16).  20 C.F.R. §

2

404.1563(e).  She has past relevant work as a school secretary, an administrative assistant, and a technical assistant.  (TR. 131).

The plaintiff alleged that she stopped working on May 28, 2002 because she was very stressed; had poor concentration; had to make frequent trips to the bathroom; had to rely on fellow workers; and was let go due to budget cuts.[2]  (TR. 130).  The plaintiff's former supervisor, Frances S. Ligler, D. Phil, D. Sc., sent the plaintiff's attorney an email, in which she stated that the "quality and quantity" of the plaintiff's work diminished after she developed fibromyalgia; that the plaintiff was always tired and frustrated; that she produced documents at about half her previous pace and made data entry mistakes she had never made before; that the plaintiff had tried working part-time but that did not solve the problem; and that is was not until the plaintiff stopped working that she was able to get her pain under control.  (TR. 269). Dr. Ligler stated that before the plaintiff developed fibromyalgia, she had been well-respected as an administrator and handled her job duties well. *Id.*

Dr. Eric Schoen, a rheumatologist, has treated the plaintiff since November 2000. (TR. 224).  In November 2000, the plaintiff complained of hip, thigh, knee, and ankle pain, as well as low energy and chronic fatigue. *Id.*  She reported that her pain was worse with activity.  *Id.*  Dr. Schoen noted that the plaintiff had ten out of eighteen

---

[2]  The record reveals that Plaintiff's help, and not Plaintiff herself, was let go due to budget cuts.  (R. at 130.)  The other reasons cited by the Magistrate Judge are accurate.  (*See id.*) Plaintiff also testified that she stopped working (as a "technical assistant/conference coordinator" (R. at 131)) when she took a leave of absence for the summer and did not go back.  (R. at 316.) She also stated she took the leave of absence to see how she would feel if she were not working.  (*Id.*)

tender points and diagnosed fibromyalgia.
Dr. Schoen prescribed Flexeril and encouraged
the plaintiff to continue her regular
exercise program, which consisted of three to
four one-hour session per week at a gym.
(TR. 220, 225).

In February 2001, the plaintiff reported
that a local injection for bursitis had not
helped her, that she was sleeping better with
the Flexeril but had no energy after 3 p.m.;
that she still exercised regularly but was
able to do less than her previous norm; and
that she had episodes of intense pain in her
left thigh and shin. (TR. 217). Dr. Schoen
noted that the plaintiff's left leg pain
could be "radicular for nerve entrapment,"
increased the plaintiff's dosage of Vioxx,
and started the plaintiff on Prednisone. *Id.*
The following month, the plaintiff complained
of diffuse pain, most prominent in her left
leg, and interrupted sleep. (TR. 215). Dr.
Schoen reported that the plaintiff had
fourteen out of eighteen tender points,
decreased range of motion in her left hip,
mild tenderness along the proximal hip
adductors on the left, and a tender bilateral
posterior iliac spine. *Id.* Dr. Schoen again
increased the plaintiff's dosage of Vioxx,
started her on Elavil, and discontinued
Prednisone treatment. *Id.*

Dr. Schoen prescribed acupuncture in
March 2001. (TR. 214). In April 2001, Jeanne
Chiang, M.D., summarized the plaintiff's
relevant medical history prior to beginning
acupuncture. (TR. 213). Chiang noted that
the plaintiff's left hip arthritis had
started two years prior and had not improved
with anti-inflammatory drugs, steroids, local
injections, or physical therapy. *Id.* Dr.
Schoen also reported that the plaintiff had
insomnia in the past but slept regularly due
to the combination of her pain medications.
*Id.* After treatment began, the plaintiff
reported that she had more energy and that
her left hip did not hurt as much, although
her left hip range of motion was unchanged.

4

The plaintiff also complained of right wrist deep pain, which she attributed to typing more than usual. (TR. 211). The plaintiff continued to report improvement in her hip pain. (TR. 207-10). In June 2001, the plaintiff reported that she could walk a couple of miles every evening. (TR. 203).

In April 2002, the plaintiff complained of more pain in her forearms and radial wrists related to increased typing at work. (TR. 193). Dr. Schoen reported that the plaintiff was now working only four days a week to decrease stress. Dr. Schoen advised the plaintiff to ice her wrists at the end of the work day and to wear a thumb splint. *Id.*

Notably, since the plaintiff's alleged disability onset date of May 28, 2002, she has sought medical care less frequently than before. In September 2002, the plaintiff told Dr. Schoen that she had taken three months off from working over the summer and was exercising regularly, doing water aerobics and walking. (TR. 186). She reported that she felt better but had pain in her right foot and bilateral forearms. *Id.* She had positive Finkelstein's signs bilaterally and her right foot was diffusely tender with no swelling.

In February 2003, the plaintiff complained of urinary frequency to Carl Johnson, M.D. (TR. 183). The plaintiff reported that she could not sit through church functions, plays, or car trips, and had a poor quality of life. The plaintiff's urology work-up was negative. *Id.* The plaintiff reported no fatigue or sleep change and was alert, oriented, and in no acute distress. *Id.* The plaintiff was already taking Ditropan, and Dr. Johnson increased the dosage. *Id.*

In April 2003, the plaintiff reported to Dr. Schoen that she still had frequent bouts of severe pain in her legs and/or arms. (Tr. 280). She reported some relief with a new

5

pain medication but noted that the pain was intense if she did not take it.  *Id.*  The plaintiff further reported that she was not sleeping at night.  *Id.*  On physical examination, the plaintiff had eighteen out of eighteen tender points, and normal range of motion in all joints except for a decrease in internal rotation of the left hip.  *Id.*  Her hands, elbows, and knees were tender but the plaintiff could make an intact claw and fist with her hand and had not swelling in her knees.  *Id.*

In May 2003, the plaintiff saw Dr. Johnson with a request for a disability evaluation.  (TR. 277-79).  She reported muscle pain and joint stiffness and said that she had difficulty going to work.  (TR. 278).  She denied fatigue, weight change, night sweats, appetite change, sleep change, or pulmonary, cardiovascular, or gastrointestinal problems.  *Id.*  She reported pain with a variety of movements and with certain palpations, but had normal muscle strength in all extremities, normal gait, and normal mood.  (TR. 278-79).  Dr. Johnson gave the plaintiff a letter stating that the plaintiff's fibromyalgia gave her difficulty walking, standing, and doing her activities of daily living, but noting that not all of her days were severe.[3]  (TR. 276).

Dr. Schoen also completed a disability report on the plaintiff's behalf.  (TR. 263-67).  Dr. Schoen's report was a form consisting of fill-in-the-blanks and checked boxes.  *Id.*  Dr. Schoen opined that the plaintiff was incapable of even low stress jobs; could sit, stand, or walk only two hours in an eight-hour day; could walk only half a block before experiencing severe pain or needing rest; would need unscheduled breaks; and could never lift or carry any

---

[3]  Dr. Johnson's letter also stated Plaintiff "has no warning when her pain will be severe.  It is my opinion that this patient is totally disabled."  (R. at 276.)

weight.[4]  (TR. 265-66).

In June 2003, the plaintiff told Dr. Johnson that she had general aches and pains but felt well.  (TR. 273).  The plaintiff reported no fatigue or sleep change and reported that she exercised regularly.  (TR. 273).  In December 2003, the plaintiff told Dr. Schoen that she had been stable during the summer but had increased right calf pain during the previous two weeks.  (TR. 271).  The plaintiff also reported that her pain had finally been relieved with Flexeril and she continued to do water exercises and sleep well with medication.  *Id.*  On physical examination, the plaintiff was generally well and in no acute distress.  *Id.*  Dr. Schoen reported that the plaintiff had eighteen out of eighteen tender points but negative straight-leg raising, no swelling or effusions, full 5/5 strength, and normal ranges of motion in all joints except for a decrease in internal left hip rotation.  *Id.*  Dr. Schoen remarked that the plaintiff had experienced a recent flare-up of fibromyalgia, but was back to baseline.  *Id.*

The plaintiff stated in her disability application that she belonged to a number of clubs, including a quilting club, although she had several unfinished projects.  (TR. 102).  The plaintiff's husband noted that the plaintiff had a number of hobbies, including puzzles, water aerobics, ballroom dancing, needlepoint, sewing, and quilting, although she found it difficult to concentrate enough to finish projects.  (TR. 114, 116).  The plaintiff testified that on a typical day, she gets up at 9:00 a.m., goes to a water aerobics class, then comes back to the house, has lunch, does deadheading in the garden, and if it's a good, day, does some quilting

---

[4]  Dr. Shoen also opined Plaintiff's condition was likely to produce good days and bad days and, on average, her impairments would likely cause her to be absent from work more than four times a month.  (R. at 266.)

7

> or goes to the community pool for more
> exercise.  (TR.  338-40).

(Doc. 13 at 3-9.)

### III.  Disability Determination Process

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[5]  It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences

---

[5]  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

> only if his physical or mental impairment or
> impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of
> substantial gainful work which exists in the
> national economy, regardless of whether such
> work exists in the immediate area in which he
> lives, or whether a specific job vacancy exists
> for him, or whether he would be hired if he
> applied for work.

42 U.S.C. § 423(d)(2)(A).

preclude him from doing any other sort of work.  20 C.F.R. §§ 416.920(a)-(f); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

The relevant time period for this case is May 28, 2002, through March 18, 2004, the date of the ALJ's decision.  (R. at 23, 68.)

The instant decision was ultimately decided at the fourth step of the process, when the ALJ concluded Plaintiff was not disabled because she could perform her past relevant work as an accounting clerk.  (R. at 22.)  The ALJ found that Plaintiff's past relevant work as an administrative assistant, secretary, and accounting clerk was classified as skilled and sedentary but her work as a secretary was light as she performed it.  (R. at 21.) The ALJ noted the Vocational Expert ("VE") testified that Plaintiff could perform all three past relevant occupations as they are generally performed in the economy and as she performed them.  (R. at 21-22.)  However, "giving some credence to the claimant's

complaints of pain since fibromyalgia can be expected to cause some pain," the ALJ determined Plaintiff could return only to her past relevant work as an accounting clerk, which, the ALJ noted, was classified "at the low level of skilled work" in the Dictionary of Occupational Titles ("DOT").  (R. at 22.)

In his decision, the ALJ identified the following specific findings of fact and conclusions of law:

> 1. The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant's fibromyalgia is a "severe" impairment, based upon the requirements in the Regulations (20 CFR § 404.1520(c)).
>
> 4. The medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P of Regulation No. 4.
>
> 5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 6. The claimant has the residual functional capacity to perform work at less than full range of light with a sit/stand option.  The claimant can never use hand/arm or foot/leg controls with either extremity.  She can never climb rope/ladder/scaffolding.  She can occasionally climb stairs, stoop, kneel,

10

crouch and crawl.  She can occasionally reach overhead bilaterally.  She can never be exposed to extreme cold, extreme humidity or fumes, dusts, gases and poor ventilation.  She can never have concentrated exposure to water/liquids.  She can never work in high exposed places or around fast moving machinery on the ground.

7.   The claimants's past relevant work as an accounting clerk did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 404.1565).

8.   The claimant's medically determinable fibromyalgia does not prevent the claimant from performing her past relevant work.

9.   The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 404.1520(e)).

(R. at 22.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  A reviewing court is "bound by the ALJ's findings of fact if they are supported by substantial evidence in the record."  *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*

11

*v. Perales*, 402 U.S. 389, 401 (1971); *Plummer*, 186 F.3d at 427

(quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)).

Therefore, we will not set aside the Commissioner's final decision

if it is supported by substantial evidence, even if we would have

reached different factual conclusions.   *Hartranft*, 181 F.3d at 360

(*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91

(3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the

Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . .").   An ALJ's

decision can only be reviewed by a court based on the evidence that

was before the ALJ at the time he or she made his or her decision.

*Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

### IV. Discussion

At the outset of our review of whether the ALJ has met the

substantial evidence standard regarding the matters at issue here,

we note the Third Circuit has repeatedly emphasized the special

nature of proceedings for disability benefits.   *See Dobrowolsky v.*

*Califano*, 606 F.2d 403, 406 (3d Cir. 1979).   These proceedings are

not strictly adversarial, but rather the Social Security

Administration provides an applicant with assistance to prove his

claim.   *Id.*   "These proceedings are extremely important to the

claimants, who are in real need in most instances and who claim not

charity but that which is rightfully due as provided for in Chapter

7, Subchapter II, of the Social Security Act."   *Hess v. Secretary*

*of Health, Education and Welfare*, 497 F. 2d 837, 840 (3d Cir. 1974).  As such, the agency must take extra care in developing an administrative record and in explicitly weighing all evidence. *Dobrowolsky*, 606 F.2d at 406.  Further, the court in *Dobrowolsky* noted "the cases demonstrate that, consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed."  *Id.*

Finally, the Third Circuit has recognized that it is necessary for the Secretary to analyze all evidence.  If he has not done so and has not sufficiently explained the weight he has given to all probative exhibits, "to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  *Dobrowolsky*, 606 F.2d at 407. In *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981), the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected.  "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper."  *Id.* at 706-07.  However, the ALJ need not undertake an exhaustive discussion of all the

13

evidence.  *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  Further, the ALJ does not need to use particular language or adhere to a particular format in conducting his analysis.  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated."  *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

Here, the Magistrate Judge determined the ALJ's decision is supported by substantial evidence and recommends denial of Plaintiff's appeal.  (Doc. 13.)  For the reasons discussed below, we disagree with the Magistrate Judge's recommended disposition.

Plaintiff raises four objections to the Report and Recommendation.  (Doc. 14.)  She first asserts the Magistrate Judge erred in finding essentially harmless error  in the ALJ's failure to consider a written statement from Plaintiff's employer verifying her inability to adequately perform her past relevant work.  (*Id.* ¶ 1.)  Second, Plaintiff maintains the Magistrate Judge erred in finding the ALJ appropriately assigned little weight to the opinions of Plaintiff's treating specialist regarding her residual functional capacity.  (*Id.* ¶ 2.)  Next Plaintiff contends the Magistrate Judge erred in finding it appropriate that the ALJ did not include restrictions on attention and concentration.  (*Id.* ¶ 3.)  Finally, Plaintiff finds error in the Magistrate Judge's

14

determination that the ALJ properly concluded Plaintiff's bladder control problem was not a severe impairment at Step Two of the sequential evaluation.  (*Id.* ¶ 4.)

## A.   *Former Employer's Evidence*

Plaintiff argues the Magistrate Judge should not have concluded that the ALJ's failure to consider a written statement from Plaintiff's last employer did not constitute error.  (Doc. 15 at 3.)

The regulations provide that in addition to evidence from acceptable medical sources, other evidence may be used to determine the severity of an impairment or how an impairment affects a claimant's ability to work or function.  20 C.F.R. §§ 404.1513, 416.913.  Social Security Ruling 06-03p was promulgated to clarify how "other source" opinions are considered.  First, other sources include evidence from employers.  SSR 06-03p.  The ruling states that the weight to be given to this evidence will vary according to the particular facts of a case.  *Id.*  Some factors to be considered include the following: 1) how long the source has known the individual and how frequently the source has seen her; 2) the consistency of the opinion with other evidence; 3) the degree to which the source presents relevant evidence to support the opinion; 4) how well the source explains the opinion; and 5) whether the source has any specialty or expertise related to the individual's impairment.  *Id.*  In further explanation of consideration of this

type of evidence, the ruling notes there is a difference between what an ALJ must consider and what an ALJ must explain, although an ALJ "generally should explain the weight given to opinions of these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.*

Statements from employers are also relevant to a credibility assessment. SSR 96-7p. In pertinent part the Ruling states: "Assessment of credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record." SSR 96-7p. In addition to medical information, evidence to be considered includes: "[s]tatements and reports from . . . other persons about . . . prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work." *Id.*

The evidence of record in this case contains a statement from Dr. Frances Ligler, Plaintiff's former employer, which the ALJ did not reference in her decision. (*See* R. at 15-23, 269.)

> I worked closely with Betty Lamb for more
> than 10 years, she performed an outstanding
> job in an administrative assistant's role.
> She handled correspondence, set up data
> handling systems, organized and instituted
> filing procedures, handled editorial

responsibilities for journal support,
monitored expenditures and reports from
contractors, and completed special tasks in
collaboration with multiple scientists as the
needs in the division required.  She was well
respected as one of our best administrators
and probably the best we had in terms of
accounting skills.  And she handled the
rapidly changing, high stress environment
with aplomb.

With development of her fibromyalgia, all
this changed.  Both the quality and the
quantity of her work declined.  She tried her
best to do whatever she could to minimize the
impact of her pain on her work, exploring a
variety of therapeutic approaches, exercise
and diet regimens.  When she was at work, she
was frustrated by her inability to complete
tasks at her previous level of performance.
She was always tired and had to work at not
being irritable since she was also
uncomfortable.  Her own frustration magnified
the stress around her, and her heightened
stress level produced more pain.  On some
days, she had too much pain in her hands or
wrists to use the keyboard.  She made
mistakes that she never would have made in
terms of handling numbers and information.
Even phone numbers were incorrectly recorded
in phone messages.  She produced documents at
about half the pace she had previously and
her accounting was inadequate.  She finally
tried working part time, but this did not
seem to solve the problem.  She was just
stressed and in pain as before.  It was not
until she stopped working that she was able
to get her pain under control.

(R. at 269.)

Here Plaintiff contends Dr. Ligler's statement is compelling

evidence which directly contradicts the ALJ's finding at Step Four

that Plaintiff was capable of performing her past relevant work as

an accounting clerk.  (Doc. 15 at 6.)  Plaintiff further argues the

17

ALJ's failure to mention the statement in her decision warrants remand because it is both an omission that makes it impossible to determine whether she considered the statement in her decision and a violation of regulatory authority.  (*Id.*)

Defendant asserts the Magistrate Judge properly decided this issue in that Plaintiff's former employer specifically addressed the job Plaintiff performed at the time, that of administrative assistant, and the ALJ found that Plaintiff could not do that job as it was previously performed.  (Doc. 16 at 1.)  Defendant further contends the ALJ's finding indicates her decision "clearly considered the ramifications of the employer's statement and clearly accepted its primary premise."  (*Id.*)

First, we note that in essence Dr. Ligler's statement amounts to an "other source" opinion concerning the impact of Plaintiff's fibromyalgia impairment on her work abilities.  Therefore, Dr. Ligler's statement is one that should be considered in the context of Ruling 06-03p as well as Ruling 96-7p.

We conclude Defendant's and the Magistrate Judge's consideration of this issue does not focus on specific facts asserted in Dr. Ligler's statement, facts relevant to the ALJ's decision.  Both assert that Dr. Ligler talked about the position the ALJ found Plaintiff could no longer perform and she did not talk about the accounting clerk position that both the VE and the ALJ concluded Plaintiff was still capable of.  (Doc. 13 at 10-12;

Doc. 16 at 2.)  The problem with this analysis is two-fold: Dr.
Ligler specifically talks about Plaintiff's accounting and data
entry difficulties, and her statement supports Plaintiff's general
credibility, not just, as Defendant and the Magistrate Judge posit,
her credibility as it relates to her inability to perform her job
as administrative assistant.  (R. at 269.)

     We recognize Dr. Ligler's statement links Plaintiff's pain
with stress and that a job with lower level stress may decrease
some symptoms.  However, this distinction does not undermine the
relevance of Dr. Ligler's statement.  The VE testified that the
position of accounting clerk was a skilled position.  (R. at 357.)
He also testified if you are only able to handle low stress, you
would not be able to perform semi-skilled work or higher.  (R. at
365.)  Therefore, insofar as Dr. Ligler's statement speaks to
Plaintiff's impairment related to stress, it is relevant evidence.

     Similarly, the statement is relevant evidence when considered
in the context of the VE's testimony that the position of
accounting clerk is a position requiring  "concentrating on
details, applying math skills to process numerical data, reading
and copying number [sic] accurately and correctly."  (R. at 357.)
Dr. Ligler's statement is pertinent to these skills in that she
stated that with the development of fibromyalgia Plaintiff was
unable to use a keyboard at times due to pain, she made mistakes in
terms of handling numbers and information, and her accounting was

inadequate.  (R. at 269.)  The ALJ's need to consider the statement in the context of whether Plaintiff could perform her past relevant work as an accounting clerk cannot be denied given the specificity of Dr. Ligler's observations.  This is all the more apparent because Dr. Ligler's statement relating Plaintiff's pain with her ability to perform functions the same or similar to that of an accounting clerk can also be interpreted to be relevant to Plaintiff's ability to concentrate and focus: the VE testified that frequent concentration, focus and memory difficulties would preclude all past relevant work and competitive work at any level. (R. at 362.)

Similarly, if we look at the specific factors set out in Social Security Ruling 06-03p regarding the weight to be given "other source" evidence, we conclude Dr. Ligler's statement is not insignificant.  Regarding how long the source has known the individual and how frequently the source has seen her, Dr. Ligler saw Plaintiff daily for ten years - a time encompassing the onset and development of Plaintiff's fibromyalgia.  (R. at 269.)  As to the consistency of Dr. Ligler's statement with other evidence, the statement is consistent with evidence of record, including evidence from Plaintiff's treating physicians, Drs. Johnson and Schoen (*see*, *e.g.*, R. at 182, 263-68, 269), questionnaires completed by Plaintiff and her husband (R. at 98-117), and Plaintiff's testimony (R. at 269, 316-55).  Dr. Ligler's statement should also be given

some weight based on the degree to which she presents relevant evidence to support her opinion - she does not just speak in generalities but identifies specific skills which were impacted by Plaintiff's condition. (R. at 269.) Finally, although Dr. Ligler has no specialty or expertise related to Plaintiff's impairment, as the Senior Scientist at the Naval Research Laboratory in the Center for Bio/Molecular Science and Engineering and a former clinical researcher in the field of immunology (R. at 306-07), her observations should be seen as that of a trained scientist and worthy of credibility. *Id.*

While we reject Plaintiff's assertion that the ALJ was under a regulatory duty to discuss Dr. Ligler's statement, we agree that the ALJ was under a duty to consider it. (*See* Doc. 15 at 5.) Based on the foregoing discussion, we cannot tell from the record whether the ALJ did so: she did not reference Dr. Ligler's statement and many aspects of it were relevant to her specific credibility and RFC findings. (*See* R. at 15-23.) Our determination that this uncertainty is cause for remand is also based on the guidance found in Social Security Ruling 06-03p regarding an ALJ's duty to explain consideration of "other source" evidence in a decision: an ALJ "generally should explain the weight given to opinions of these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's

reasoning, when such opinions may have an effect on the outcome of the case."  SSR 06-03p.  Here, Dr. Ligler's statement contains the type of relevant information that may have an effect on the outcome of the case.  Therefore, pursuant to relevant authority, the case must be remanded because we cannot determine whether the ALJ considered the statement, which is relevant "other source" evidence entitled to some weight, in making her decision.

**B.    *Treating Physician's Opinion***

Plaintiff avers the Magistrate Judge erred in finding the ALJ gave appropriate weight to the opinions of Plaintiff's treating rheumatologist.  (Doc. 15 at 7.)

Plaintiff's objection requires us to determine whether the ALJ considered Dr. Schoen's opinion in conformity with what is known as the "treating physician rule."  The "treating physician rule" is codified at 20 C.F.R. § 404.1527(d)(2), and is widely accepted in the Third Circuit.  *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993); *see also Dorf v. Brown*, 794 F.2d 896 (3d Cir. 1986).  The regulation addresses the weight to be given a treating physician's opinion: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case, we will give it controlling

weight." 20 C.F.R. § 416.927(d)(2).[6] "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citations omitted). In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion

---

[6] 20 C.F.R. 404.1527(d)(2) states in relevant part:

Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988)).  When confronted with contradictory medical evidence, the ALJ may choose whom to credit, but in these instances there is an acute need for the ALJ to explain the reasoning behind conclusions.  *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).  The *Fargnoli* court noted that the appeals court will vacate or remand a case where such an explanation is not present.  *Id.* Finally, other circuit courts have stated  "[t]he Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) (*citing Metz v. Shalala*, 49 F.3d 374, 377 (8th Cir. 1995)).

Here the ALJ found that Dr. Schoen's RFC assessment was entitled to little weight because it was not supported by sufficient objective medical evidence and Plaintiff's reported daily activities.  (R. at 20.)

Plaintiff points to medical evidence supporting Dr. Schoen's assessment: clinical records which confirm that her fibromyalgia meets the objective diagnostic criteria established by the American College of Rheumatology, and the sporadic nature of her ability to

perform daily activities.  (Doc. 15 at 7.)  Regarding the latter, Plaintiff cites *Fargnoli* for the proposition that "a claimant's ability to perform sporadic activities does not equate with a capacity for full-time work activity."  (*Id.* (*citing Fargnoli*, 247 F.3d 34).)

Defendant supports the Magistrate Judge's conclusion that the ALJ gave Dr. Schoen's report proper consideration in that the RFC assessment was a fill-in-the-blank form and was inconsistent with his own findings and the other evidence of record.  (Doc. 16 at 3.)

We acknowledge some of the inconsistencies in Dr. Schoen's RFC assessment identified by the Magistrate Judge.  (*See* Doc. 13 at 13-14.)  However, in light of the need for remand based on the issue of the ALJ's consideration of "other source" evidence and recognizing the record contains evidence suggesting the worsening of Plaintiff's condition in the latter part of the relevant period and when under work stress, the ALJ is directed to review her finding of the weight attributed to Dr. Schoen's RFC assessment.

Here the ALJ discounted Dr. Schoen's assessment of Plaintiff's condition (which included the findings that she could not tolerate even low stress jobs and would be absent from work due to her impairment more than four times a month)[7] (R. at 264, 266) in part

---

[7]  The finding regarding work stress is significant to the disability determination because, as noted in our discussion of Dr. Ligler's statement, the VE testified that Plaintiff's former work as an accounting clerk - the work the ALJ concluded Plaintiff remained capable of doing - was a skilled position.  (R. at 357.)

because she found basically "no objective medical findings" and,
other than pain on examination, "no other physical findings." (R.
at 20.)  The problem with looking for independent medical findings
and observations is that fibromylagia is a disease which is notable
for its lack of objective diagnostic techniques.[8]  Similarly, the

---

The VE also testified that if you are only able to handle low
stress, you would not be able to perform semi-skilled work or
higher.  (R. at 365.)   The finding as to projected absenteeism is
significant because the VE also testified that "[n]o employer will
tolerate more that two days a month on a consistent basis."  (R. at
363.)

   [8]  Fibromyalgia is "a rheumative disease that causes
inflammation of the fibrous connective tissue components of
muscles, tendons, ligaments and other tissue."  *Benecke v.
Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004).  It is a chronic
condition, causing "long-term but variable levels of muscle and
joint pain, stiffness and fatigue."  *Brosnahan v. Barnhart*, 336
F.3d 671, 672 n.1 (8th Cir. 2003).  The disease is "poorly-
understood within much of the medical community [and] is diagnosed
entirely on the basis of patients' reports and other symptoms."
*Benecke*, 379 F.3d at 590.  "In the past, many believed fibromyalgia
was just a psychological aberration because it has no visible signs
and could not be confirmed in laboratory tests."  Earl J. Brewer,
M.D., & Kathy Cochran Angel, *The Arthritis Sourcebook* (1998),
<http://mywebmd.com/content/article/1680.51250.  Clinical signs and
symptoms supporting a diagnosis of fibromyalgia under the American
College of Rheumatology Guidelines include "primarily widespread
pain in all four quadrants of the body and at least 11 of 18
specified tender points on the body."  *Id.; Green-Younger v.
Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003).  These tender points are
called "trigger points."  *Id.*  All points may not be painful at all
times in every person.  *Id.*  The pain may vary in intensity
according to the time of day, weather, activity level, stress, and
sleep patterns.  *Id.*  Other symptoms often associated with the
pain include the following: sleep disturbance, depression, daytime
tiredness, headaches, alternating diarrhea and constipation,
numbness and tingling in the hands and feet, feelings of weakness,
memory difficulties and dizziness.  Cleveland Clinic Department of
Rheumatic and Immunologic Diseases, *Arthritis: Fibromyalgia* (2004),
at http://my.webmd.com/content/article/78/95601.  "Patients with
fibromyalgia are symptomatically made worse by stress."  *Yeager v.*

problem with the ALJ's decision to afford little weight to Dr. Shoen's opinion based on Plaintiff's testimony that she "does some quilting[,] performs some household duties and is able to take care of personal needs" (R. at 20) is that varying degrees of pain and symptoms are expected with fibromylagia.[9]

These observations lead us further conclude that, upon remand, the ALJ should consider the nature of fibromyalgia, its inherent lack of objective medical indicators, and the expected varying intensity of pain and symptoms when reviewing the weight attributed to Dr. Schoen's assessment.  While the Magistrate Judge briefly addressed these considerations (Doc. 13 at 14), in the future a reviewing court could better determine whether the ALJ met the substantial evidence standard if the ALJ herself acknowledged the difficulties outlined above.

**C.    Attention and Concentration Restrictions**

Plaintiff asserts the Magistrate Judge erred in finding

---

*Reliance Standard Life Ins. Co.*, 88 F.3d 376, 378 n.1 (6th Cir. 1996); *see also* Mayo Foundation for Medical Education and Research, *Fibromyalgia: Signs and Symptoms*, at http://www.mayoclining.com/invoke.cfm?id=DSOOO79.

In *Green-Younger*, the court noted: "a growing number of courts, including our own, have recognized that fibromyalgia is a disabling impairment and that 'there are no objective tests which can conclusively confirm the disease.'"  *Green-Younger*, 335 F.3d at 108 (quoting *Preston v. Sec. of Health and Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1988) and listing cases from other circuits). Joint swelling is not a symptom of fibromyalgia and, therefore, its absence is no indication that the plaintiff's condition is not disabling.   *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).

[9]   *Id*.

27

appropriate the ALJ's failure to include limitations of attention and concentration in her RFC analysis.  (Doc. 15 at 10.)

We need not review the parties' arguments relating to this objection in that our finding regarding Plaintiff's first objection implicates a reconsideration of the ALJ's findings relating to attention and concentration.  *See supra* pp. 15-22.

## D.   *Bladder Control Problem*

Finally, Plaintiff avers the Magistrate Judge erred in finding the ALJ concluded Plaintiff's bladder control problem was not a severe impairment at Step Two of the evaluation process. (Doc. 15 at 11.)

As the Magistrate Judge noted "an impairment is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."  (Doc. 13 at 15-16 (*citing* 20 C.F.R. § 404.1521).)

The Magistrate Judge concluded the ALJ's decision on this issue is based on substantial evidence because the record contained scant evidence in support of Plaintiff's contention that her bladder control problem is a severe impairment and it contains evidence that the condition improved with medication.  (Doc. 13 at 16-17.)

We agree with this assessment, noting the ALJ specifically identified the basis of her finding.  (R. at 17.)  The ALJ's conclusion is bolstered by Plaintiff's testimony: although she

moved her desk closer to the restroom, the condition did not prevent her from working. (R. at 346.) Further, she testified that she went to the bathroom twelve times a day (later saying the frequency depended on when she had something to drink). (R. at 346.) This would not present a problem for the past relevant work of accounting clerk: when asked by Plaintiff's attorney what impact the need to use the restroom once an hour would have on competitive employment, the VE responded that at the semi-skilled or skilled level "it would probably be tolerated."[10] (R. at 364.)

## V. Conclusion

For the reasons discussed above, we do not adopt the Magistrate Judge's Report and Recommendation (Doc. 13). Plaintiff's appeal of the Commissioner's denial of benefits (Doc. 1) is granted and the case is remanded for further consideration consistent with this Memorandum. An appropriate Order follows.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: March 23, 2007_____

---

[10] Notwithstanding our conclusion that the ALJ's decision on Plaintiff's bladder control problem is based on substantial evidence, we note that if the ALJ finds upon remand that Plaintiff is able to perform less than semi-skilled work, reconsideration of this issue may be warranted. (*See* R. at 364.)

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BETTY LAMB,                        :
                                   :CIVIL ACTION NO. 3:05-CV-2491
        Plaintiff,                 :
                                   :(JUDGE CONABOY)
        v.                         :(Magistrate Judge Mannion)
                                   :
MICHAEL ASTRUE,                    :
Commissioner of Social             :
Security,                          :
                                   :
        Defendant.                 :

---

**ORDER**

AND NOW, THIS 23rd DAY OF MARCH, FOR THE REASONS SET OUT IN THE ACCOMPANYING MEMORANDUM, IT IS HEREBY ORDERED THAT:

1.    The Magistrate Judge's Report and Recommendation (Doc. 13) is NOT ADOPTED;

2.    Plaintiff's Appeal of the Commissioner's decision (Doc. 1) is GRANTED;

3.    Pursuant to the fourth sentence of 42 U.S.C. § 405(g), this matter is remanded to the Commissioner of Social Security for further consideration consistent with the accompanying Memorandum;[11]

---

[11]   The fourth sentence of 42 U.S.C. § 405(g) provides that "[t]he courts shall have the power to enter, upon the pleadings and transcripts of the record, a judgment affirming, modifying or reversing the decision of the Commissioner of Social Security with or without remanding the cause for a re-hearing." Accordingly, the Clerk of Court will be directed to enter judgment in accordance with this Order. See Kadelski v. Sullivan, 30 F.3d 399 (3d Cir. 1994).

30

4.   The Clerk of Court is directed to enter judgment in
     accordance with this Order and to mark the matter in this
     Court **CLOSED**.


                                   S/Richard P. Conaboy
                                   RICHARD P. CONABOY
                                   United States District Judge